UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JAVON WEBSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:22-cv-01160-SHM-tmp |
| ) | |
| CORECIVIC, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE AND GRANTING
LEAVE TO AMEND**

On May 31, 2022, Plaintiff Javon Webster, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a *pro se* complaint in the United States District Court for the Middle District of Tennessee alleging violations of 42 U.S.C. § 1983 and state law. (ECF No. 1.) On July 28, 2022, the court transferred Webster's case to the Western District of Tennessee, Eastern Division, for the "convenience of parties and witnesses and the interest of justice" because: (1) the allegations address conditions at HCCF; and (2) Webster and the Defendants alleged to be "most immediately responsible" live in the Western District of Tennessee. (ECF No. 9 at PageID 66-67.)

The Complaint alleges claims of: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment; (2) negligence; (3) gross negligence; and (4) abuse of power under Tenn. Code Ann. §§ 39-16-402 and 403. (ECF No. 1 at PageID 1-2, 16.) Webster sues seven (7) Defendants in their official and individual capacities: (1) CoreCivic; (2) Damon Hininger, the Chief Executive Officer of CoreCivic; (3) Dr. Yvonne Neau, a CoreCivic medical

doctor;[1] (4) Dr. Stokes, a HCCF medical doctor; (5) HCCF Nurse Practitioner Herron; (6) HCCF Health Services Administrator Julie Sullivan; and (7) HCCF Warden Hilton Hall. (*Id*. at PageID 3-8.)

Webster seeks: (1) declarations that: (a) Defendants have violated Webster's Eighth Amendment right to medical care; and (b) that Defendants have violated Webster's First Amendment right not to be retaliated against for filing this lawsuit; (2) injunctive relief requiring that Webster be provided physical therapy for his hand, shoulder, back and legs; (3) one hundred fifty thousand dollars ($150,000.00) in compensatory damages, to be paid jointly and severally by Defendants, for physical and emotional injuries; (4) seventy-five thousand dollars ($75,000.00) in punitive damages to be paid jointly and severally by Defendants; and (5) "such other relief as it may appear" that Webster is entitled. (*Id*. at PageID 2, 19-20.)

For the reasons explained below, the Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** and Webster is **GRANTED** leave to amend.

I. **FACTUAL BACKGROUND**

Webster complains of constant, severe pain in his left hand, right shoulder, lower back, legs, and knees from two different injuries and the denial of adequate medical care at CoreCivic facilities. (ECF No. 1 at PageID 9-10, 14-15.) Webster alleges that he was injured while working at South Central Correctional Facility ("SCCF"), a CoreCivic prison, and tried to get medical treatment from November 27, 2015 to September 3, 2021, by making over 100 "sick call" requests

---

[1] The Clerk is DIRECTED to correct the spelling of Neau's name on the docket from "Yvoune" to "Yvonne" and to add Sullivan's first name as "Julie." (*See* ECF No. 1-2 at PageID 37.)

2

at SCCF and at HCCF. (*Id.* at PageID 9, 11, 14.) Webster alleges that, from June 13 to June 15, 2021, he did not receive his medications. (*Id.* at PageID 10.)

Webster severely dislocated his "left pinky finger" and fractured his left hand. (*Id.* at PageID 11, 15.) Webster alleges that, for five months, medical staff told Webster his hand was not "hurt bad" although he was suffering severe pain each day for almost seven years. (*Id.* at PageID 11, 14-15.) Webster alleges he was "forced back" to work at the SCCF kitchen and that he lost his grip causing him further injury and resulting in his being pinned between a "steel sink" and a "steel rack" with 250 pounds of metal cooking sheets. (*Id.* at PageID 12.)

Webster alleges that, when he arrived at HCCF, it took him 5 to 6 months to be seen as a "chronic-care patient" in violation of Tennessee Department of Correction ("TDOC") and CoreCivic medical policy. (*Id.* at PageID 12.) Webster contends that he could lose his hand or become disabled without adequate medical treatment. (*Id.* at PageID 10-11.) Webster says that "he is not getting any adequate medical care at this time." (*Id.* at PageID 11-12.) Webster asserts that medical staff have told him that they are back-logged for months, that Webster never sent in a "sick call", that his injuries are not life-threatening, and that "he will not be seen by the medical staff at all." (*Id.* at PageID 12.) Webster has had his family call the HCCF medical department so that he could receive medical treatment. (*Id.*) He alleges that Stokes is denying Webster adequate medical care, only examining Webster for "3 to 5 minutes" before telling Webster that "he's good to go," and that Stokes is taking Webster off chronic-care although he is still in pain. (*Id.* at PageID 13.)

Webster asserts that Stokes handed over his care to Herron, that Herron "find[s] just enough wrong" with Webster to keep him on pain medication, and that Webster has been on pain medication for six years. (*Id.*) Webster alleges that Herron did not adequately examine Webster

3

or refer him to a doctor before telling Webster that he would not see an outside doctor and would not receive physical therapy. (*Id.* at PageID 15.) Webster asserts that the fact he has been on pain medication for an extended period is proof that something is severely wrong with his body. (*Id.* at PageID 14.)

Webster alleges that official CoreCivic policy requires HCCF medical providers to seek approval from Neau and Hininger before "prescribing outside Specialist Physicians medical care; and any non-formulary drugs" to HCCF prisoners. (*Id.* at PageID 9.) Webster alleges that this policy is unconstitutional. (*Id.*) Webster alleges that Defendants have "a policy of restricting, if not outright denying, follow-up care ordered by a[n] outside Specialist Physician when such care is expensive." (*Id.* at PageID 18.) Webster alleges that Defendants' failure to ensure Webster received needed medical treatment constituted deliberate indifference to his serious medical needs causing further injury and physical and emotional pain. (*Id.*)

Webster alleges that he has spoken with HCCF nurses who said that the medical department was at least four months behind in treating inmates and that, if an inmate were not dying, he would probably not be seen for some time. (*Id.* at PageID 10.) Webster contends that the HCCF medical department has severe staffing problems and that Webster was told that he did not receive his medications because the department was "short of staff." (*Id.*)

Webster alleges that he has written several letters to Hininger and Neau "trying to correct these serious medical problem[s], as well as to help [Webster] to get adequate and proper medical treatment for his injuries." (*Id.* at PageID 14.) Webster alleges that, as of September 3, 2021, he had received no response. (*Id.*)

Webster alleges that Neau, Stokes, Herron, Sullivan, and Hall have not provided Webster the proper medications. (*Id.* at PageID 16.) He alleges that Hininger, Neau, Stokes, Herron,

4

Sullivan, and Hall did not act "on their knowledge of a substantial risk of serious harm" to Webster. (*Id.* at PageID 17.) He alleges that Neau, Stokes, Herron, Sullivan, and Hall refused to authorize and provide physical therapy for Webster's hand, shoulder, back, and legs. (*Id.*)

## II.   LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8 provides guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### III. REQUIREMENTS TO STATE A CLAIM UNDER § 1983

Webster sues under 42 U.S.C. § 1983. (ECF No. 1 at PageID 1.) To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

### IV. ANALYSIS

#### A. DELIBERATE INDIFFERENCE

Webster alleges denial of adequate medical care. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 105; *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). There is a constitutional violation only when the doctor exhibits "*deliberate indifference* to a prisoner's serious illness or injury." *Estelle*, 429 U.S. at 107. "[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 103, 105. Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105; *see Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) ("Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'") To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

An Eighth Amendment claim has both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component of a deprivation of medical care claim under the Eighth Amendment requires that a prisoner have a serious medical need. *Farmer*, 511 U.S. at 834; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (describing the "two theories under which a plaintiff can demonstrate the objective component of an Eighth Amendment deliberate indifference claim"). When an inmate has a medical need "diagnosed by a physician as mandating treatment," the plaintiff can establish the objective component by showing that the prison failed to provide treatment or provided treatment "so cursory as to amount to no treatment at all." *Rhinehart*, 894 F.3d at 737; *see Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *5 (6th Cir. Nov. 8, 2024) ("a medical professional is deliberately indifferent in only two narrow contexts: where the professional's medical care was either (1) 'so grossly incompetent' that it 'shock[s] the conscience' or (2) 'so cursory as to amount

7

to no medical treatment at all'"). "Outside these two categories, an inmate's remedy lies in malpractice law, not the federal Constitution." *Id.*

Webster alleges that he was deemed a chronic-care patient, suffered severe pain in his left hand, right shoulder, lower back, knees, and leg, and has been treated with pain medication for more than six years. Other than mentioning his injury, Webster has not alleged that he was diagnosed with any specific condition.

When an inmate, like Webster, who has received on-going treatment and claims that his medical care was inadequate, the Eighth Amendment requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737. The plaintiff must present "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain" and proof of the detrimental effect of inadequate treatment. *Id.* at 737-38; *see Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); *see Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) ("a prisoner suffering from pain must show that a delay in receiving treatment had a detrimental effect or that the medical provider knew that a detrimental effect was likely to occur"). Disagreement about the plaintiff's medical treatment or the plaintiff's "desire for additional or different treatment," does not amount to an Eighth Amendment violation. *See Woodcock v. Correct Care Sols.*, 861 F. App'x 654, 660 (6th Cir. 2021).

Although medical proof is not required at the screening stage, Webster's allegations do not satisfy the objective component of his Eighth Amendment claim for purposes of screening the Complaint. He merely alleges that his treatment was inadequate without any detail about the injury or injuries, a medical diagnosis, the medical treatment provided, or the medical need for the physical therapy that Webster now seeks.

8

The subjective component of a deprivation of medical care claim under the Eighth Amendment requires that jail officials acted with the requisite intent – i.e., had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards it. *Id*. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Although Webster complains that his treatment was inadequate, he does not alleges facts showing the Defendants knew of an excessive risk of harm to Webster's health and safety. Webster alleges that he has been on a consistent pain-management regimen for the past six years. He contends that he needs physical therapy. Webster's allegations amount to a disagreement about treatment. Disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *see Mitchell v. Hininger*, 553 F. App'x 602, 606 (6th Cir. 2014) (finding no deliberate indifference where prisoner was provided a regimen of pain management). "For a deliberate-indifference claim, it's the doctor's judgment that counts—not the patient's desires. The Constitution gives inmates a right to be free from deliberate indifference to their medical needs, but not a right to receive any particular treatment or desired

9

medication." *Whyde*, 2024 WL 4719649, at *5.  Negligence or medical malpractice do not amount to constitutional violations.  *See Farmer*, 511 U.S. at 835 36; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Webster's Eighth Amendment deliberate indifference claim against Defendants in their official and individual capacities is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### B.  RETALIATION

Webster seeks declaratory relief for Defendants' violation of his First Amendment right not to be retaliated against for filing this lawsuit.  (ECF No. 1 at PageID 19.)  A claim of retaliation has three elements:

> the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims."  *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  Filing a prison grievance is also protected conduct.  *Hill*, 630 F.3d at 472.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Temporal proximity can provide circumstantial evidence of retaliatory motive."  *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between

protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Webster has not alleged facts, as required by Fed. R. Civ. P. 8, to state a claim of First Amendment retaliation. Webster's First Amendment retaliation claim against Defendants in their official and individual capacities is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### C.  STATE LAW CLAIMS

Webster seeks relief for state law claims of gross negligence, medical negligence, and abuse of power. (ECF No. 1 at PageID 1-2.) Under 28 U.S.C. § 1367(a), "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)) (internal quotation marks omitted). Section 1367 grants district courts broad discretion about whether to exercise supplemental jurisdiction over related state law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Courts should "weigh several factors, including 'values of judicial economy, convenience, fairness, and comity.'" *Id.* at 951–52 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted).

Because all federal claims in the Complaint are being dismissed, the Court DECLINES to exercise supplemental jurisdiction over Webster's state law claims of gross negligence, medical negligence, and abuse of power.

V.   **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. Rhode Island.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend under the conditions set forth below.

VI.   **CONCLUSION**

For the reasons explained above:

A.   The Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to allege facts stating a claim to relief under 42 U.S.C. § 1983, *see* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

      B.      Leave to amend is **GRANTED**. An amended pleading must be filed within twenty-day (21) days of the date of this Order and must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Plaintiff's claims. An amended complaint supersedes the Complaint and must be complete in itself without reference to the prior pleadings. Plaintiff must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amended complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss the Complaint with prejudice in its entirety and enter judgment.

      IT IS SO ORDERED this *9th* day of May, 2025.

                                                /s/ *Samuel H. Mays, Jr.*
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE